UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| MARIO J. THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF FORT WAYNE, *et al.*, | ) | No.: 1:06-CV-320 PS |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Mario Thomas led Fort Wayne Police on a dangerous car chase around a Fort Wayne neighborhood, and when he was finally apprehended, he got thumped by the police – at least that is what he alleges in this excessive force claim brought under 42 U.S.C. § 1983. All of the events that form the basis of Thomas's claims were captured on video cameras in several different police cruisers. Plaintiff brought this case against the City of Fort Wayne and sixteen Fort Wayne police officers,[1] alleging that the officers used excessive force when they arrested him. Of the seven officers who remain, there is no evidence that four of them (Officers Souther, Pulver, Ealing, and Anthony) used excessive force, and therefore summary judgment is granted with respect to those officers. Summary judgment is also granted on Plaintiff's failure to intervene and municipal liability claims. But because there is a genuine issue of fact about whether Officers Hensler, Smith, and Hoffman used excessive force during the arrest,

---

[1] On August 10, 2007, Plaintiff stipulated to the dismissal of three of the officers, Officers Ritchie, Fleming, and Taylor. (DE 15.) Plaintiff now concedes that dismissal of Officers Hadley, Messick, Luce, Parrish, Green, and LaLone is also appropriate because these individuals did not have any involvement in the apprehension, detention, or arrest of Plaintiff. (Pl.'s Resp. at 5.) Summary judgment is therefore **GRANTED** to all of these officers without further discussion.

Defendants' motion is denied with respect to Thomas's excessive force claims against those officers.

## I. BACKGROUND

Around 9:00 p.m. on January 31, 2006, Officer Christopher Hoffman was traveling northbound on Anthony Boulevard in the City of Fort Wayne when he spotted a blue Camaro that was speeding. (Hoffman Aff. ¶ 2.) He activated his emergency lights and sirens in an attempt to make a traffic stop, but the Camaro kept going. (*Id*.) Hoffman realized that the Camaro was the same type of car driven by Mario Thomas, who had several outstanding arrest warrants; of course, Thomas was, in fact, the driver. (*Id*.) Thomas acknowledges that he refused to pull over and attempted to evade arrest. (Thomas Aff. ¶ 2.) He further admits that he did not have a driver's license at the time of this incident, nor has he ever had one. (Thomas Dep. at 9.) When asked at deposition why he didn't stop for Officer Hoffman, he testified that "there were a lot of cars on the street, and it was dark, and I was just trying to get where somebody was at that knew me," so he would feel safe pulling over. (Thomas Dep. at 28-29.) In the meantime, several other unmarked and marked squad cars joined the pursuit.

Thomas proceeded down Anthony Street, crossing the yellow center line twice. (Hoffman Aff. ¶ 4.) He turned the wrong way down Lillie, a one-way street. (*Id*. ¶ 4.) He then proceeded to hit the curb, blowing out the rear passenger side tire, but he kept going. (*Id*.) He also nearly broadsided another vehicle when he failed to stop for a stop sign on Lillie. (*Id*.) Hoffman called for backup, and eventually Thomas was forced to stop on Lewis Street when he was surrounded by police cars. (*Id*. ¶ 5.)

Thomas testified at deposition that once he stopped his car, he put his hands up to

surrender.  (Thomas Dep. at 34.)  The videotape clearly shows that Thomas did raise his hands within seconds of stopping his car and before police reached his vehicle.  (Pl.'s Ex. B, Car 1760, 20:49:20-30.)  But Officer Gary Hensler avers that when he approached and ordered Thomas to show his hands and roll down the window, Thomas did not comply.  (Hensler Aff. ¶ 5.)  The video clearly belies this assertion, at least as it relates to the part about Thomas not showing his hands.  Officers on the passenger side of the Camaro tried the passenger side but found that it was locked.  (*Id*.; Pl.'s Ex. B, Car 1760, 20:49:20-30.)  Hensler did not try to open the driver's side door; indeed, it appears from the video that Hoffman's car was parked alongside Thomas's car so closely that the driver's side could not be opened.  This is confirmed by the fact that after Thomas was placed in the police cruiser, one of the officers backed the cruiser up so that Thomas's door could be opened and the driver's side of the car could be searched.  (Pl.'s Ex. B, Car 1732, 20:53:20-30.)

Hensler then grabbed Thomas's driver side window, which was partially rolled down, and pulled it out, breaking it.  (Hensler Aff. ¶ 6.)  Hensler avers that he repeatedly gave Thomas verbal commands to exit the vehicle, but Thomas refused.  (*Id*.)  This would seem to be contradicted by the fact that Hoffman's car was parked nearly adjacent to Thomas's driver side door in a manner which clearly would have prevented Thomas from opening the door widely enough to get out.  Officer Anthony Smith then reached in and removed Thomas's seatbelt.  (*Id*.)  Thomas denies refusing to get out of the car.  (Thomas Aff. ¶ 3.)  All of this occurred over just a few seconds.

Officers Hensler and Smith pulled Thomas from the vehicle through the window opening after it was broken out by Hensler. Once he was out of the car, Officers Hensler and Smith

3

pinned Thomas to the ground.  (Hensler Aff. ¶ 7.)  According to Thomas, "When the police were pulling me out of the vehicle, I felt some strikes to my head, but the strikes were not from fists. . . . I was getting hit in the head by a gun.  I was hit three (3) times very hard on the head."  (Thomas Aff. ¶¶ 4-5.)  The only blow to the head that can be seen on videotape is not from Hensler or Smith but from Officer Hoffman, who had come around the hood of his car to assist in removing Thomas from the vehicle.  As Hensler and Smith were taking Thomas out of the car, Hoffman struck Thomas on the head once, maybe twice, with a baton or flashlight.  (Pl's Ex. B, Car 1760, 20:49:36-39.)  Hoffman admits as much:  "My flashlight may have come in contact with Plaintiff's upper body or head in the course of extricating him from his vehicle."  (Pl.'s Ex. C at 9.)  Thomas testified that as they were pulling him from the car and handcuffing him, the officers repeatedly said, "Stop resisting."  (Thomas Dep. at 38, 42, 44.)

Once Thomas was pulled from the car and onto the ground in front of Hoffman's car, several officers surrounded him on the ground – Officers Hoffman, Hensler, and Smith, as well as Officers Stephanie Souther, Jason Anthony, and Shane Pulver.  All of the officers aver that Thomas was resisting arrest by pulling his hands underneath himself on the ground, and then once the officers got his hands behind his back, by clasping his hands together to avoid being handcuffed.  (Hoffman Aff. ¶ 5; Hensler Aff. ¶¶ 7-8; Smith Aff. ¶¶ 7-8; Souther Aff. ¶ 6; Anthony Aff. ¶ 3; Pulver Aff. ¶ 4.)  Officer Smith knelt on Thomas's back and struck Thomas's left forearm, while Hensler applied a wrist lock in order to separate Thomas's hands.  (Smith Aff. ¶ 8; Hensler Aff. ¶ 8.)  Officer Souther also delivered three or four strikes between Thomas's shoulder blades.  (Souther Aff. ¶ 6.)

Thomas claims that his legs were repeatedly stomped on during the arrest, even though he wasn't resisting. (Thomas Aff. ¶ 5.) Officer Hoffman admits that he repeatedly pushed Thomas's legs down onto the pavement, but says he did so because Thomas kept bringing his legs up to kick the officers around him. (Hoffman Aff. ¶ 5.) The videotape shows Hoffman stomping on Thomas's leg area, then batting at his legs with short strikes of his baton, and then taking about seven smaller steps on his legs while the others are surrounding Thomas's upper body. (Pl.'s Ex. B, Car 1732, 20:48:45-20:49:15, Car 1760, 20:49:43-50:02.) However, Thomas's legs are not visible on the tape, so it is not clear whether Thomas was kicking his legs up or was otherwise resisting. Within a few seconds, Hoffman walked away.

After police handcuffed Thomas, they stood him up and leaned him onto the hood of Hoffman's squad car. Officer Jason Anthony pinned Thomas's head to the hood "so that he could not spit on the officers" while they searched him. (Anthony Aff. ¶ 4.) However, the videotape shows that Thomas was able to adjust his head at least slightly even with Anthony's elbow on the side of his head. Anthony observed blood on the hood of the car, and believed it was coming from Thomas. (Anthony Aff. ¶ 4.) Thomas does not claim that police used excessive force after he was handcuffed and raised off the ground, and he was ultimately placed in Hoffman's car without further incident.

Thomas has not produced any medical evidence of his injuries in response to the motion for summary judgment, but he avers that he needed an ambulance because his legs were "watery and wet;" he could not hear out of his left ear; and glass from the broken window had been ground into his legs. (Thomas Aff. ¶¶ 6, 9.) At Thomas's request, Hoffman took him to St. Joseph Hospital, where glass was removed from his legs, and he received two or three stitches on

5

his left calf and liquid stitches in his ear, which was bleeding.  (*Id*. at 51-53.)  Thomas received pain medication at the Allen County Jail.  (*Id*. at 54.)

Thomas was charged with resisting law enforcement by means of a vehicle, a Class D felony, resisting law enforcement during his arrest, a Class A misdemeanor, and operation of a vehicle by an unlicensed driver, a Class A misdemeanor.  (Defs.' Mem. Supp. at 8.)  He pled guilty to resisting law enforcement by means of a vehicle and was sentenced to two years, with one and a half years suspended.  (*Id*.)

## II. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party."  *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992) (internal quotations omitted).  A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).  In making this determination, the Court must draw every reasonable inference from the record in the light most favorable to the non-moving party.  *Haefling v. United Parcel Serv., Inc.,* 169 F.3d 494, 497 (7th Cir.1999).

**A. Section 1983 Claims Against Individual Officers**

    **1. Excessive Force**

"[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "This inquiry involves 'a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Abdullahi v. City of Madison*, 423 F.3d 763, 768 (7th Cir. 2005) (quoting *Graham*, 490 U.S. at 396 (citations and quotation marks omitted)). The excessive force analysis is "not capable of precise definition or mechanical application" but "requires careful attention to the facts and circumstances of each case, including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The court must balance the amount of force used in relation to the danger posed to the community or to the arresting officers. *Smith v. City of Chicago*, 242 F.3d 737, 743 (7th Cir. 2001). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

    Taken in the light most favorable to the Plaintiff, the evidence shows that Thomas led police on a chase along residential Fort Wayne streets that lasted over four minutes and put police and other motorists in danger. When police stopped Thomas and began to approach his car, he raised his hands. Thomas claims that he did not do or say anything from this point on

7

that would lead officers to believe he was resisting arrest, and the videotape partially confirms his account inasmuch as it shows Thomas raising his hands in submission.  After one of the officers approached the passenger side door and found it locked, Officer Hensler broke out the driver's side window.  With the help of Officer Smith, and with Officer Hoffman standing by, Hensler pulled Thomas out of the car.  Officer Hoffman hit Thomas with his police baton or flashlight at least once as he was being pulled out of the car, and Thomas contends he was hit in the head three times with a gun on his head and left ear.  The videotape demonstrates that Thomas went to the ground primarily on his own body weight.  Once Thomas was on the ground, Officer Hoffman stomped on his legs several times, although Thomas says he was not resisting.  Thomas ultimately received stitches in his ear and his leg from the blows to his head and from the cuts to his legs from the broken glass as Hoffman stepped on them.

It will be helpful at the outset to weed out several officers whose contact with him is not part of the basis for his excessive force claims.  Plaintiff's affidavit and statement of genuine issues refer only to the manner in which officers pulled him out through the broken window, the three blows to his head while he was being removed, and the stomps on his legs while he was being handcuffed.  Thomas has not suggested that officers used excessive force in handcuffing him or in restraining him while he was being searched.  The officers who participated in removing Thomas from his car were Officers Hensler, Smith, and Hoffman.  Officer Hoffman was the only person who stomped on Thomas's legs.  Because Officers Souther and Pulver's only opportunity to use force on Plaintiff was when he was on the ground, there is no suggestion that these officers used excessive force.  Likewise, there is no contention that Officer Anthony

8

used excessive force in holding Plaintiff's head to the hood when he was being searched.[2] Officer Ealing avers that he never had any physical contact with Plaintiff, and this evidence is not contradicted by Plaintiff's account or by review of the videotape. Therefore, Officers Souther, Pulver, Ealing, and Anthony are entitled to summary judgment on the excessive force claim.

I now proceed to the heart of Thomas's claims. A reasonable jury could conclude that Officers Smith, Hensler, and Hoffman used excessive force by pulling Thomas out of the broken car window and striking his head with a blunt object when he was not resisting. There is no question that police are justified in using a higher degree of force to restrain a suspect whom they reasonably believe to be dangerous or a flight risk. *Smith v. City of Chicago*, 242 F.3d 737, 743-44 (7th Cir. 2001) (affirming summary judgment for defendant officers who pulled suspect out of his car, pinned his arms behind his back, and slammed him against the hood of his car to handcuff him, where plaintiff continued driving for twelve blocks after police first put their sirens on, yet voluntarily obeyed police commands to unlock his door). However, a jury could conclude that hitting Thomas in the head with a blunt object was force beyond what was

---

[2] In his response to Defendants' motion for summary judgment, Thomas references being "throw[n] on the hood of the car whereupon Plaintiff hit his head yet again." (Resp. at 8.) Thomas also avers in his affidavit that officers "put [his head] into the hood of the car." (Thomas Aff. ¶ 10.) However, to the extent Thomas asserts that officers used more force than was necessary in forcing him into contact with the police car, Defendants are entitled to summary judgment. The videotape conclusively establishes that officers leaned Thomas onto the hood of the car to search him, and they did not use excessive force when doing so. (Pl.'s Ex. B, Car 1732, 20:49:35-35.) While Officer Anthony can be seen later holding Thomas's head down onto the hood of the car with his elbow, he does not appear to be grinding down so as to inflict pain; Thomas's head moves freely under Anthony's elbow at certain points, and his facial expressions do not appear to reflect pain. (Pl.'s Ex. B, Car 1732, 20:50:09-20:51-38.)

9

reasonably necessary to effect the arrest or protect the officers especially given the evidence that Thomas had his hands in the air in a surrender mode as the officers approached Thomas' car.

Thomas's crime, resisting law enforcement in a vehicle, was serious, and given his criminal background and his recklessness that night, he could have posed a threat to the officers' safety.  But those factors would not justify strikes to Thomas's head *after* officers determined that he was not resisting arrest.  *Compare Holmes v. Vill. of Hoffman Estates*, 2007 WL 4482207, at *7 (Dec. 26, 2007) (reversing summary judgment on excessive force claim where plaintiff claimed that officer slammed his head against his car even though he did not resist arrest), *and Baker v. City of Hamilton, Ohio*, 471 F.3d 601, 607 (6th Cir. 2006) (denying summary judgment where, after suspect emerged from bushes with his hands up, officer struck suspect in the head, knocking suspect to the ground, then later struck suspect in the knee, yelling "that's for running from me."), *with Duran v. Sirgedas*, 240 Fed. Appx. 104, 117 (7th Cir. 2007) (no excessive force where officer struck suspect in the leg with a baton and punched him in the head with a closed fist, where suspect struggled with officers and bit one of them).

The videotape shows Hoffman striking Thomas with his baton or flashlight as Hensler and Smith are pulling him out the window.  Thomas appears to be compliant at that point. Hoffman admits as much, although his version implies that he only inadvertently grazed Thomas instead of intentionally striking him.  A reasonable jury could find that Thomas was repeatedly hit in the head with a blunt object even though he did not struggle, and could conclude that such force was excessive.

From the videotape, it appears likely that the only officer who could have been delivering those blows is Officer Hoffman, since Officers Hensler and Smith appear to be absorbed with the

10

task of pulling Smith's body out of the vehicle, and since Hoffman acknowledges that contact "may have" been made.  However, it is simply impossible to tell from the videotape exactly what happened in those brief moments when Thomas was being pulled out of the car.  Therefore, summary judgment is denied with respect to all three of those officers on Thomas's claim that he was hit in the head with an object.

A jury could also find that Officer Hoffman's stomps on Thomas's legs were excessive.  This determination hinges in part on an issue of fact regarding whether Thomas was resisting arrest by kicking up his legs, or whether his legs were still as officers handcuffed him.  *Miller v. Smith*, 220 F.3d 491, 493 (7th Cir. 2000) (affirming denial of summary judgment where plaintiff alleged that after he was cuffed and laying prone on the ground, an officer kicked him twice in the back, punched him, stepped on his face, and yanked him around by the hair); *Fidler v. City of Indianapolis*, 428 F. Supp. 2d 857, 863 (S.D. Ind. 2006) (genuine issue of fact precluded summary judgment where plaintiff claimed he was stomped and kicked by an officer after he had abandoned his flight and said "I give up.").  A jury will have to decide that.  Accepting as true Thomas' claim that he was not resisting and was being utterly compliant, then a jury could readily conclude that Hoffman used more force than was reasonably necessary by repeatedly stomping on Thomas to restrain his legs.

**2. Qualified Immunity**

Defendants assert that even if there are questions of fact about whether the force used was excessive, they are entitled to qualified immunity because their conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  When an officer asserts a qualified

11

immunity defense, a court must first consider whether, taken in the light most favorable to the plaintiff, the facts show the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the court concludes that the officer's conduct was objectively unreasonable, the court must proceed to the second step of determining whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. A plaintiff can show that a right is "clearly established" by statute or constitution in at least two ways: 1) he can point to an analogous case establishing the right to be free from the conduct at issue; or 2) he can show that the conduct was "so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Smith*, 242 F.3d at 742. Plaintiff correctly asserts that he need not find a prior case that is factually "on all fours" with this case; rather, the question is whether a reasonable officer would have known that his actions were unlawful. *Green v. Butler*, 420 F.3d 689, 701 (7th Cir. 2005) (citing *Nabozny v. Podlesny*, 92 F.3d 446, 456 (7th Cir. 1996)).

  As discussed above, the evidence when viewed most favorably to the Plaintiff would allow a jury to find a constitutional violation here. Thus, I proceed to the second step of the qualified immunity test. It is clearly established that, assuming that Thomas did not struggle as police were removing him from the car, he had a right not to be intentionally struck in the head with a gun or other hard object. Such blows would have been gratuitous if they were not necessary to control Thomas or carry out the arrest. The Seventh Circuit has clearly stated that "it is one thing to use force in subduing a potentially dangerous or violent suspect, and quite

12

another to proceed to gratuitously beat him." *Frazell v. Flanigan*, 102 F.3d 877, 885 (7th Cir. 1996); *see also Lester v. City of Chicago*, 830 F.2d 706, 714 (7th Cir. 1987) (jury could have found excessive use of force if it believed plaintiff's testimony that even though she did not resist arrest, officers threatened to punch her, kneed her in the back, dragged her down a hallway, and handcuffed her so tightly her wrists were bruised), *overruled on other grounds by McNair v. Coffee*, 279 F.3d 463 (7th Cir. 2002); *Herzog v. Vill. of Winnetka*, 309 F.3d 1041 (7th Cir. 2002) (plaintiff entitled to jury trial on excessive force claim where she produced evidence that the arresting officer shoved her to the ground even though she was not resisting).

  Thomas alleges that the blows to his head were a gratuitous beating. Though Defendants argue that it was not clearly established "that the minimal use of force to extricate an uncooperative suspect from a vehicle after that suspect led officers on a chase was constitutionally impermissible," their position obviously relies on factual predicates (*i.e.* that force was minimal and that Thomas was uncooperative) that have not been established. Indeed, the video evidence suggests the contrary inasmuch as Thomas can clearly be seen raising his hands in the car, a clear indication that he was surrendering.

  In addition, since the force in this case allegedly involved potentially deadly force – blows to the head with a weapon – I find that no reasonable person could have believed that gratuitous blows to the head would not violate clearly established rights. *See Jordan v. City of Indianapolis*, 2002 WL 32067277, at *6-7 (S.D. Ind. Dec. 19, 2002) (striking an unarmed suspect about the head with a heavy metal flashlight was potentially deadly force that would violate a clearly established right); *Baltimore v. City of Albany*, 183 Fed. Appx. 891, 898 (11th Cir. 2006) (in denying summary judgment on qualified immunity grounds against officer who

13

used flashlight to hit a misdemeanor suspect who was resisting arrest, noting that "there appears to be agreement that striking a suspect in the head with a heavy flashlight or other blunt instrument at least poses a 'substantial risk of serious bodily injury,' if not death."); *Hodsdon v. Town of Greenville*, 52 F. Supp. 2d 117, 124 (D. Me. 1999) ("[A] gratuitous blow to the head with a blunt instrument would clearly constitute excessive force . . . .").

It is even more clearly established that it is unconstitutional to hit or kick a non-resisting suspect after he has already been restrained. *Miller*, 220 F.3d at 493 (7th Cir. 2000) (affirming denial of summary judgment; plaintiff was allegedly kicked and punched while lying face-down, handcuffed); *Drummond v. City of Anaheim*, 343 F.3d 1052, 1061-62 (9th Cir. 2003) (reversing summary judgment; using knees to press down on suspect's back and neck while he lay on the ground in handcuffs was objectively unreasonable); *see also Cooper v. City of Fort Wayne*, 2007 WL 1455763, at *11 (N.D. Ind. May 15, 2007) (holding that it was clearly established as of June 2005 that it was unlawful for officers to kick arrestee and hit him with a flashlight after he had been handcuffed). Thus, it was clearly established as of January 31, 2006 that a suspect has a right not to be stomped on once he is within the control of police and is not resisting. Therefore, Officers Hensler, Smith, and Hoffman are not entitled to qualified immunity.

### 3. Failure to Intervene

Thomas also claims that all of the other individual Defendants are liable for their failure to intervene while their fellow officers used excessive force against him. An officer who fails to prevent other law enforcement officers from violating the constitutional rights of citizens can be held liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has

14

been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001). "[A] 'realistic opportunity to intervene' may exist whenever an officer could have 'called for a backup, called for help, or at least cautioned [the excessive force defendant] to stop.'" *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (quoting *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)). "Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Lanigan v. Vill. of East Hazel Crest*, 100 F.3d 467, 478 (7th Cir. 1997) (citation omitted).

      Thomas argues that there was time for the bystander officers to realize that excessive force was being used, and to intervene. But a reasonable jury could not possibly conclude that the bystander officers had a chance to stop the force that was used in this case. The only potentially excessive force in this case took place when Thomas was being pulled out of the car and was allegedly struck in the head, and when Hoffman stomped on his legs. It took the officers only seconds to pull Thomas out. If Thomas was struck by a gun or other object during this time, it happened very quickly. The strike from Hoffman's baton that is visible on videotape was quick, and may not even have been visible to the other officers (after all, three different police cameras captured the incident, and yet only a single strike is visible from the tape). Moreover, when Hoffman was stepping on Thomas's legs, all of the other officers either were restraining Thomas's upper body or were observing that process closely. None of the other officers were watching Hoffman. Nor was Hoffman's conduct so outrageous or conscience-

15

shocking that the other officers would have to have deliberately looked away in order not to notice.  His contact with Thomas's legs was brief – less than twenty seconds – and then after Thomas had been controlled, he walked away.  There is simply no evidence to support the theory that the bystander officers saw excessive force being used but chose to look the other way.

**B.  Municipal Liability Under § 1983**

Thomas's § 1983 claim against the City of Fort Wayne fails.  Under *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978), a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.  Rather, a § 1983 action against a municipality must allege that the execution of the municipality's policy or custom inflicted the injury or that the actions were undertaken by a policymaker.  *Id.* at 694.  Beat cops like the defendants in this case are clearly not policymakers, *Eversole v. Steele*, 59 F.3d 710, 716 (7th Cir. 1995), and Plaintiff does not contend otherwise.  Moreover, Plaintiff has not asserted that the City of Fort Wayne failed to train its officers properly or that it espoused a custom of condoning its officers' use of excessive force.  *Forman v. Richmond Police Dep't*, 104 F.3d 950, 965 (7th Cir. 1997) (summarily affirming grant of summary judgment in favor of police department, where plaintiffs failed to assert that constitutional deprivation was a result of an official policy or custom of the police department).

Rather, Plaintiff merely alleges that "[t]he City [of] Fort Wayne is responsible for the actions of its officer who committed battery and other torts against Plaintiff, causing Plaintiff to suffer pain and other injuries."  (Compl. at 2.)  This is simply another way of arguing that Fort Wayne should be held liable under the doctrine of *respondeat superior* – which it, of course,

16

cannot be.  Therefore, the City is entitled to summary judgment on Plaintiff's § 1983 claim against it.

**C. State Law Claims**

Plaintiff appears to suggest that the City might be vicariously liable for the officers' use of excessive force under Indiana state law.[3]  First, although Plaintiff has not explicitly stated a state law excessive force claim against the Officer Defendants in their individual capacity, the officers would be immune from any such claim.  Under the Indiana Tort Claims Act (ITCA), "[a] lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally."  Ind. Code § 34-13-3-5(b).  Since the Complaint alleges that the officers acted "within the scope of their employment and under color of law when they came into contact with the Plaintiff" (Compl. ¶ 2) and the City of Fort Wayne admitted as much (Answer ¶ 2), any state law claims against the officers in their individual capacities are barred.

Defendants argue that the law enforcement exception of the ITCA also immunizes the City of Fort Wayne.  Section 34-13-3-3(8) of the Indiana Code shields a "governmental entity or an employee acting within the scope of the employee's employment" from liability for losses resulting from the "enforcement of . . . a law . . . unless the act of enforcement constitutes false arrest or false imprisonment."  Ind. Code § 34-13-3-3(8).  Some fifteen years ago, the Indiana

---

[3] Plaintiff did not plead any state law violations in his Complaint, although he did attach his Notice of Tort Claim to his Complaint.  Since Defendants reference Plaintiff's "state law claims," they evidently do not challenge that they received notice of those claims.  Therefore, I consider them as having been fairly raised during the course of the litigation.

17

Supreme Court held that because law enforcement officers owe a private duty to refrain from using excessive force in the course of making arrests, the law enforcement exception did not immunize officers against excessive force claims.  *Kemezy v. Peters*, 622 N.E.2d 1296, 1297 (Ind. 1993).  However, the Court has since disavowed the public duty versus private duty test that *Kemezy* relied on.  *Benton v. City of Oakland City*, 721 N.E.2d 224, 230-31 (abrogating *Quakenbush v. Lackey*, 622 N.E.2d 1284, 1290 (Ind. 1993); *King v. Northeast Security, Inc.*, 790 N.E.2d 474 (Ind. 2003) (observing that *Benton* implicitly rejected the public/private duty test under the ITCA's law enforcement exception).  Since then, the Indiana Supreme Court has been silent regarding whether the excessive force exception to ITCA immunity announced in *Kemezy* remains valid.

In considering questions of state law, federal courts must apply state law as declared by the state supreme court, or in the absence of a statement by that court, by its intermediate appellate courts.  *Trytko v. Hubbell, Inc.*, 28 F.3d 715, 719 (7th Cir. 1994).  Different courts have come to different conclusions on this issue.  *Compare, e.g., Fidler v. City of Indianapolis*, 428 F. Supp. 2d 857, (S.D. Ind. 2006) (holding that *Kemezy* remains good law)*, with O'Bannon v. City of Anderson*, 733 N.E.2d 1 (Ind. Ct. App. 2000) (holding that *Kemezy* is no longer valid, and therefore, officers were immune under § 34-13-3-3(8) against excessive force claim).  This court has concluded that the plain language of § 34-13-3-3(8) protects governmental entities from claims based on excessive force.  *Ramusack v. Swanson*, 2005 WL 3359114, at *12 (N.D. Ind. Dec. 9, 2005); *Fox v. Pittenger*, 2005 WL 1712216, at *8 (N.D. Ind. July 21, 2005).  In *Ramusack*, I noted that the plain language of § 34-13-3-3(8) excludes only claims of false arrest and false imprisonment from the realm of law enforcement immunity.  2005 WL 3359114, at

18

*12.  Given the Indiana Supreme Court's guidance that "it is the legislature, and not the courts, that is in the best position to determine the nature and extent to which governmental units in Indiana should be insulated from tort liability," *Benton*, 721 N.E.2d at 232, it is appropriate to hew to the statute's plain language and construe the exceptions narrowly.

Clearly, the officers in this case were acting within the scope of their employment and were attempting to enforce the law when they arrested Thomas, and there is no suggestion that a false arrest occurred here.[4]  Therefore, both the City and the officers are immune from any state law claims.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [DE 17] is **GRANTED IN PART** and **DENIED IN PART**.  Summary judgment is granted with respect to all claims against Defendants City of Fort Wayne and Officers Stephanie Souther, Robert L. LaLone, Jason Anthony, Philip Ealing, Shane Pulver, R. Parrish, Anthony Green, Jay M. Luce, and Benjamin Messick.  Summary judgment is denied with respect to Plaintiff's excessive force claims against Officers Chris Hoffman, Anthony Smith, and Gary Hensler.  Plaintiff's Motion to File a Sur-Reply (DE 31) is **DENIED**; Defendants' Motion to Strike Plaintiff's Motion to File a Sur-Reply (DE 33) is **DENIED** as moot.

---

[4] Plaintiff's argument that the recent case of *Patrick v. Miresso*, 848 N.E.2d 1083 (Ind. 2006) somehow curtails Defendants' immunity is frivolous.  That case merely reinforced the still-valid holding in *Quakenbush v. Lackey*, 622 N.E.2d 1284 (Ind. 1993) that law enforcement immunity does not immunize police officers from failing to exercise their statutory duty of care in driving their police vehicles.  *Patrick*, 848 N.E.2d at 1085-86.

The Final Pretrial Conference/Settlement Conference is hereby **RESET** for February 8, 2008 at 11:00 a.m. in Hammond.  The February 28, 2008 Trial Management Conference and the March 3, 2008 trial setting are hereby **CONFIRMED**.

**SO ORDERED**.

ENTERED: January 31, 2008.

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT
